UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

SCOTT ALLEN SELBY,

        Plaintiff,                           Case No. 1:13-CV-1010

v.

                                            HON. GORDON J. QUIST

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION**

        This is an action pursuant to Section 405(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Administrative Law Judge (ALJ) failed to apply the appropriate legal standards. Accordingly, the Commissioner's decision is reversed and this matter remanded for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

**Background**

        Plaintiff, Scott Allen Selby, filed an application for DIB on February 10, 2012, alleging disability due to knee pain, depression, and attention deficit hyperactivity disorder (ADHD). Plaintiff's claim was denied, and Plaintiff requested a hearing. Plaintiff appeared with counsel and testified at a hearing before Administrative Law Judge (ALJ) William G. Reamon. In a written decision dated May 3, 2013, the ALJ determined that Plaintiff was not disabled. The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision

in the matter. Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). The Commissioner is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard gives the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence could have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

### Analysis of the ALJ's decision

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).

The burden of establishing the right to benefits rests on Plaintiff, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2295 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

In the instant case, the ALJ determined that Plaintiff suffered from the following severe impairments: a history of left knee anterior cruciate ligament (ACL) reconstruction with residual knee pain, obesity, affective disorder, and ADHD. (Dkt. #8-2 at Page ID#62). With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform light work with certain specified limitations. The ALJ found that Plaintiff could not perform his past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. Relying on testimony from a vocational expert, the ALJ concluded that there were a significant number of jobs in the regional and national economy that Plaintiff could perform. The ALJ concluded, therefore, that Plaintiff was not entitled to disability benefits.

**1.      Treating Physician Opinions**

Plaintiff argues that the ALJ failed to follow the treating physician rule. Under that rule, a treating physician's medical opinions and diagnoses are entitled to great weight in evaluating a plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the

4

medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); 20 C.F.R. § 404.1527(c)(2). Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, No. 91-1325, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (per curiam) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)). Such reasons must be "'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewer the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id.* (quoting SSR No. 96-2p, 1996 WL 374188, at *5). This requirement "'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

Plaintiff argues the ALJ erred in rejecting the opinion of his treating psychologist, Dr. Rowell. Plaintiff began seeing Dr. Rowell on August 13, 2012. On September 25, 2012, after seeing Plaintiff three times, Dr. Rowell completed a psychological questionnaire. (Dkt. #9-3 at Page ID#507-14.) Dr. Rowell found that Plaintiff was markedly limited in his ability to perform a workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.* at Page ID#511.) He further determined that Plaintiff was incapable of tolerating even low stress. (*Id.* at Page ID#513.) In a letter accompanying the questionnaire, Dr. Rowell explained that Plaintiff was "overwhelmed by [his] problems," which included losing two jobs, breaking his left fibula twice, filing for bankruptcy, learning that he had a severe bladder problem, and having his wife leave him. (Dkt. #9-3 at Page ID#516.) Dr. Rowell diagnosed Plaintiff with depressive disorder based on Plaintiff's reports and Dr. Rowell's own clinical observations supporting those reports. (*Id.*) Dr. Rowell further opined that he believed that Plaintiff was unable to work. (*Id.*)

The ALJ assigned Dr. Rowell's opinion "little weight." (Dkt. #8-2 at Page ID#69.) The ALJ explained:

> [The opinion] was based on a temporary treating relationship of two months in late 2012, cited no mental status exam findings or Global Assessment of Functioning scores, and repeats the observations that the claimant is caught up in negative thinking. Moreover, the claimants' allegations of financial ruin are dubious as he has drawn and continues to draw unemployment insurance benefits between $3,300.00 and $5000.00 per quarter and it was noted that the claimant's wife was employed and paid most of the bills.

*Id.*

This analysis suffers from several flaws. First, contrary to the ALJ's statement, Dr. Rowell's questionnaire included Global Assessment of Functioning (GAF) scores and mental status observations. Moreover, the Court is unclear as to the meaning of the ALJ's statement that Dr. Rowell's opinion repeated observations of Plaintiff being caught up in negative thinking. Negative thinking would not seem to detract from Dr. Rowell's diagnosis. If, however, the ALJ was

6

indicating that he believed Dr. Rowell's diagnosis was based solely on Plaintiff's complaints, such statement is belied by the treatment notes. For instance, Dr. Rowell's treatment notes include his own observations that Plaintiff was "very anxious" and only "marginally coping," (dkt. #9-5 at Page ID#552), that he was "wrapped up in helplessness and hopelessness," (*id.* at Page ID#554), and that he "was not able to move to looking at what he can do to manage his feelings" (*id.* at Page ID#560). Such observations are acceptable evidence in the context of a mental illness. *See Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir.1989) ("[W]hen mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology.") (internal quotation marks omitted).

Moreover, Dr. Rowell's opinion should not have been rejected simply because it relied, in part, on Plaintiff's subjective complaints. *See id.* On the contrary, clinical interviews may be used to diagnose mental impairments. *See Warford v. Astrue*, No. CIV.A 09–52–GWU, 2010 WL 3190756, at *6 (E.D. Ky. Aug.11, 2010) (finding that "interviews are clearly an acceptable diagnostic technique in the area of mental impairments and [an examining psychologist] could rely upon the subjective complaints elicited during the interview in formulating his functional restrictions"). Accordingly, the fact that Dr. Rowell's opinion was based in part on the observation that Plaintiff's was engaged in negative thinking did not provide a basis to reject the opinion.

Finally, the ALJ's decision was, apparently, based in part on his assessment that Plaintiff's claims of anxiety related to his finances were "dubious." As the ALJ noted, Plaintiff was receiving unemployment insurance. However, such benefits were temporary, and Plaintiff had been out of work for years. Moreover, although Plaintiff's wife was paying most of the bills, their marriage was strained, and she had left him in the recent past (although she had returned). Thus, the Court fails to understand why the ALJ found Plaintiff's claims of financial anxiety dubious, and why he discounted Dr. Rowell's opinion based on this belief.

The only remaining reason for the ALJ to give little weight to Dr. Rowell's opinion was the relatively short nature of the treating relationship. Dr. Rowell saw Plaintiff on a bi-weekly basis for two months. Although not a long-term treating relationship, it was not insignificant. Moreover, although the duration of the treating relationship is one factor to be considered in deciding whether to adopt the treating source's opinion, the Court finds that Dr. Rowell's opinion should not have been rejected on that basis alone.

Plaintiff further argues that the ALJ should not have rejected the opinion of his primary care physician, Dr. Nadeau. The ALJ gave "little weight" to Dr. Nadeau's conclusions regarding Plaintiff's psychiatric impairment because Dr. Nadeau was not a psychiatric specialist, the GAF ratings he assigned were not consistent with the remainder of the mental assessment, and his findings were inconsistent with those of Dr. Wiaduck, a treating psychiatrist that Plaintiff saw in 2010. However, Dr. Wiaduck saw Plaintiff roughly 18 months before Dr. Nadeau completed his assessment, and Plaintiff's circumstances deteriorated markedly during that period. Moreover, the ALJ did not evaluate whether Dr. Nadeau's findings were consistent with those of Dr. Rowell, which were completed closer in time to Dr. Nadeau's assessment, because the ALJ found that Dr. Rowell's opinion was entitled to little weight. As noted above, however, the Court has found that the ALJ erred in reaching that conclusion.

The Sixth Circuit has made clear that courts should "not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion." *Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir.2009). In this case, the ALJ erred in characterizing Dr. Rowell's opinion as devoid of GAF scores and mental status exam findings. Moreover, the ALJ's reasoning that Dr. Rowell's opinion was based in part on Plaintiff's negative thinking and "dubious" claims of anxiety was flawed. Finally, the ALJ failed to provide adequate other reasons for his decision to give little weight to the opinion of Dr. Rowell. Accordingly, the Court will remand for the ALJ to reconsider whether Dr. Rowell's opinion is entitled to controlling

8

weight. Because the ALJ's decision regarding the weight to be granted to Dr. Nadeau's opinion depends, in part, on the assessment of Dr. Rowell's opinion, the ALJ should reconsider that issue as well.

**2.     Plaintiff's Credibility and RFC**

Plaintiff further argues that the ALJ erred in finding that he was not completely credible and that the RFC was not supported by substantial evidence. Because the ALJ's assessment of the treating physicians' opinions upon remand may impact any finding regarding Plaintiff's credibility and RFC determination, the Court declines to address such arguments.

## Conclusion

For the reasons articulated herein, the Court concludes that the ALJ failed to apply the appropriate standards in assessing the treating physicians' opinions. However, a plaintiff can be awarded benefits only if proof of his disability is "compelling." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). While the ALJ's decision fails to comply with the relevant legal standards, at this time there is not compelling evidence that Plaintiff is disabled. Accordingly, the matter must be remanded for further factual findings, including but not necessarily limited to, reconsideration of the weight to be given to Plaintiff's treating physicians.

A order consistent with this Opinion shall issue.


Dated: September 30, 2015                    /s/ Gordon J. Quist
                                             GORDON J. QUIST
                                             UNITED STATES DISTRICT JUDGE

9